1  LAW OFFICES OF DALE K. GALIPO
   Dale K. Galipo, State Bar No. 144074
2  21800 Burbank Boulevard, Suite 310
   Woodland Hills, California 91367
3  (818) 347-3333 TELEPHONE
   (818) 347-4118 FACSIMILE
4  dalekgalipo@yahoo.com

5  LAW OFFICES OF MAURO FIORE, JR
   Mauro Firore, Jr. Esq. (SBN 196857)
6  mauro@lawyer.com
   1901 West Pacific Ave. #260
7  West Covina, California 91790
   Tel: (626) 856-5756; Fax: (626) 856-0886
8
   Attorneys for Plaintiff
9

10

11
                    **UNITED STATES DISTRICT COURT**
12
                    **CENTRAL DISTRICT OF CALIFORNIA**
13

14  MARIA SANDOVAL, personally and          Case No.: CV 09-03428 PSG (SSx)
    on behalf of the ESTATE OF VICTOR
15  SANDOVAL,                                **PLAINTIFF MARIA
                                             SANDOVAL'S OPPOSITION TO
16             Plaintiff,                    DEFENDANT COUNTY OF LOS
                                             ANGELES' MOTION IN LIMINE
17       vs.                                 NO. 6; DECLARATION OF
                                             HARRY BONNELL, M.D.**
18  COUNTY OF LOS ANGELES, ET
    AL.,                                     **Pre-Trial Conference:**
19                                           Date:      04/19/2010
               Defendants.                   Time:      2:00 PM
20                                           Ctrm.:     880

21                                           **Trial:**
                                             Date:      05/04/2010
22                                           Time:      8:30 AM
                                             Ctrm.:     880
23

24

25

26

27

28

Case No.: CV 09-03428 PSG (SSx)
**PLF'S OPP TO DEF COLA'S MIL NO. 6**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Defendants' motion is an attempt to improperly preclude Plaintiff's experts from testifying in this case.  As set forth below, the testimony of these experts, who are qualified as experts in their respective areas of testimony, is relevant, supported by sufficient facts and data, reliable, and helpful to the trier of fact.  It is, thus, admissible pursuant to Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 (1993).

## II.  DR. HARRY BONNELL'S OPINIONS ARE BOTH RELIABLE AND RELEVANT TO THE TRIER OF FACT.

### A.  Harry Bonnell, M.D., Is Qualified to Render Expert Testimony on Positional Asphyxiation Issues.

Defendants erroneously contend that positional asphyxiation issues require a specialized knowledge of the science of ventilation and oxygenation of the blood. Def. Motion at 7.  This is not true.  A specialized knowledge of ventilation and oxygenation of the blood is not required to determine the cause of death in this case. Declaration of Harry Bonnell (hereinafter "Bonnel Decl.") at 6.  In the same way that it is not necessary for a cardiologist to determine that an individual has died of a heat attack, it is also not necessary for a pulmonologist to determine that an individual has died of positional asphyxia.

Dr. Bonnell is a forensic pathologist who has conducted more than 7,000 medicolegal autopsies.  Based on this experience, Dr. Bonnell is qualified to render an opinion as to the cause of decedent's death.  In this case, it just so happens that Dr. Bonnell's conclusions as to the decedent's cause of death are precisely the same as those of the Deputy Medical Examiner Ajay Panchal.

### B.  Dr. Bonnell's Opinions Are Based on Sufficient Facts and Data.

Defendants' claim, that Dr. Bonnell's opinions are not based on sufficient facts and data, is without merit. In forensic pathology, the circumstances

surrounding a particular death are crucial to determining the cause of death, Bonnell Decl. at ¶ 6, and a review of medical records is not essential to determining the cause of death. *Id.* at ¶ 7. Forensic pathologists determine and certify the cause of death following autopsy and supportive lab tests without reviewing the patient's entire medical record, or even parts of it. *Id.*

Moreover, Dr. Bonnell has, in fact, reviewed the medical records for the decedent from the date of the incident. *Id.* Upon review of all of the aforementioned documents, Dr. Bonnell has rendered an opinion that mirrors the conclusion of Deputy Medical Examiner Ajay Panchal. *Id.* at ¶ 7. Both Dr. Bonnell and Dr. Panchal agree that positional asphyxiation associated with restraint was a cause of Victor Sandoval's death. Accordingly, Dr. Bonnell's opinions are based on sufficient data and would prove helpful to the trier of fact in assessing this central issue in the case.

### C. Dr. Bonnell's Opinions Regarding Positional Asphyxiation Satisfy the Reliability Requirement Under *Daubert*.

Defendants incorrectly claim that the theory of positional asphyxiation is unreliable under *Daubert* "because it is neither provable or verifiable/falsifiable." Def. Motion at 9. In support of their argument, Defendants rely on the findings of Dr. Neuman. However, none of the studies performed by Dr. Neuman and others replicates the real life conditions of an obese individual struggling for their life, an individual under the influence of excitatory drugs, or the combined weight of three police officers in full gear. Bonnell Decl. at ¶ 2. Institutional review boards, such as that of UCSD, have not allowed such experimentation to take place because of the risks involved. *Id.*

Moreover, neither Dr. Neuman, nor his colleagues, certify the cause of death in sudden and unexpected deaths. *Id.* at ¶ 3. Their clinical experience is, thus, unreliable in making the necessary determinations in this case. *Id.* The majority of relevant physicians, those who investigate and certify sudden and

unexpected deaths, namely forensic pathologists, understand restraint asphyxia to be a valid and well-recognized cause of death. *Id*. at ¶ 4. Further, the literature and experience document cases in which one individual, sitting on the torso of another individual, has caused the person to die as a result of inability to breathe. *Id*. at ¶ 5.

The theory of positional asphyxiation is, accordingly, a well-established theory which easily meets the requirement of the *Daubert* standard.

### III. DR. PANCHAL'S SHOULD NOT BE PRECLUDED FROM TESTIFYING AT TRIAL.

#### A. Plaintiff Is Not Required to Produce an Expert Report from Dr. Panchal, a Non-Retained Expert Witness in this Case.

Dr. Panchal is a non-retained witness who will testify to the findings of the autopsy that he personally conducted. He is neither a retained or specially employed expert, nor is he employed by a party whose duties regularly involve giving expert testimony (i.e. "in-house" experts). Accordingly, he is not required to provide a written report pursuant to Rule 26(a)(2)(B). The testimony of the deputy medical examiner in this case is akin to testimony from a treating physician, who may testify to their opinions based on their observations of an individual without a prior expert's report. Indeed, it is well-established that the testimony of physician's is excluded from the report requirements of Rule 26(a)(2)(B). *See, e.g., Fielden v. CSX Transp. Inc*., 482 F.3d 866, 869-70 (6th Cir. 2007); *see also* Adv. Comm. Notes to 1993 Amendments to FRCP 26(a)(2).

Moreover, Defendants have long been in possession of the autopsy report authored by Dr. Panchal, which is the sole basis upon which Plaintiff intends to elicit his testimony. Accordingly, there can be no claim that Defendants are not aware of the basis of Dr. Panchal's testimony in this matter. Further, both Dr. Neuman and Dr. Bonnell relied on Dr. Panchal's autopsy report in forming their opinions.

#### B. Plaintiff Has Met Her Burden Under *Daubert*

Defendants claim that Plaintiff has not established that Dr. Panchal's

testimony would be based on sufficient and known facts. Def .Motion at 10-11. There is simply no basis for this claim. Dr. Panchal performed the autopsy in this case and authored the autopsy report. Dr. Panchal will testify as to the findings in his autopsy report and the cause of death based on his autopsy of Mr. Sandoval. The cause of death, which Dr. Panchal found to be positional asphyxiation associated with restraint, is a central issue in this case.

Moreover, Defendants' claim that Mr. Clark ignores the "undisputed evidence . . .that Suspect Sandoval was breathing and alive when he was on his side", Def. Motion at 11, is simply at odds with the facts of this case. The evidence in this case establishes that Mr. Sandoval went unconscious while prone and was unconscious at the time the paramedics were called. Dr. Panchal would not, as Defendants contend, have to know how many deputies were involved or "exactly how much weight was placed" on Mr. Sandoval, in order to reach his conclusions in this case. Def. Motion at 10-11. Dr. Panchal's findings are based on his medical conclusions in this case. There were petechial hemorrhages in the eyes of Mr. Sandoval consistent with death by asphyxia. Bonnell Decl. at ¶ 8. Defendants are free to cross-examine Dr. Panchal as to his findings in this case, but there is no legal basis to preclude his testimony.

## IV. THE OPINIONS OF ROGER CLARK ARE RELEVANT TO THE TRIER OF FACT.

Defendants incorrectly claim that "Roger Clark's expert report only makes blanket criticism of the Sheriff's Department deputies responding to the scene of the 911 call." Def. Motion at 11. In fact, Mr. Clark's report is replete with specific manners in which the defendant officer's acted contrary to standard police procedures, including the use of excessive force against a non-resistive individual, the failure to follow standard policies and procedures when dealing with the mentally ill, the failure to properly restrain the decedent, and the failure to properly monitor the vital signs of the decedent. This evidence is highly probative to the

1  issues in this case and will assist a jury in evaluating the conduct of the defendant
2  officers in this case.
3        Defendants' next argue that the Peace Officers Standards and Training
4  ("POST") standards, are not relevant and will not assist the trier of fact. This claim
5  is without merit. The POST Standards are the standards taught to all officers in the
6  academy. They are relevant to establishing both the standards for properly trained
7  officers and the defendant officers' failure to comply with such standards in this
8  case.
9        Finally, Mr. Clark's opinions are not, as Defendants contend, based on
10  incomplete or inaccurate information. Mr. Clark has reviewed the entire
11  investigation file in this case including the statements of officers. Additionally, the
12  facts set forth by Defendants as "inaccurate" are, in fact, accurate: (1) The radio
13  dispatch communications make clear that there were no weapons reported, (2) the
14  nature of the 911 call and the radio dispatch make clear that the call is in reference
15  to a person who was potentially mentally ill, not a crime, and (3) Mr. Sandoval had
16  shown no resistance warranting the responding deputies to detain him or to use any
17  force against him, let alone the excessive force used in this case.   As noted
18  above, what Defendants claim to be "undisputed evidence . . .that Suspect
19  Sandoval was breathing and alive when he was on his side" is actually very much
20  in dispute. The evidence, in fact, establishes that Mr. Sandoval went unconscious
21  while prone and was unconscious at the time the paramedics were called.
22        The report of Mr. Clark, a twenty-seven year veteran of the Los Angeles
23  County Sheriffs Department (LASD), will be helpful to the trier of fact, and will
24  provide the jury with information regarding the proper training of and standards for
25  deputy sheriffs regarding mentally ill individuals, use of force, and the duty of
26  deputies to act as first responders in emergency medical situations. Mr. Clark will
27  further establish for the jury the ways in which the defendant officers acted
28  contrary to these well-established standards. Accordingly, the opinion of Mr.

1  Clark are admissible expert evidence pursuant to *Daubert*.

2  **V.     CONCLUSION.**

3       For all the foregoing reasons, Defendants' motion in limine to exclude at
4  trial Plaintiff's expert opinions pursuant to Federal Rule of Evidence 702 and
5  *Daubert* should be denied.

6  Dated: April 9, 2010                LAW OFFICE OF DALE K. GALIPO

                                By:    /s/ *Dale K. Galipo*
                                       Dale K. Galipo
                                       Attorneys for Plaintiff

# DECLARATION OF HARRY J. BONNELL, M.D.

I, Harry J. Bonnell, M.D., hereby declare:

1.   I have been retained by the Law Offices of Dale K. Galipo, attorney of record for Plaintiff, Maria Sandoval in the case of *Sandoval v. County of Los Angeles*. The matters stated herein are within my personal knowledge and I can testify competently to these matters.

2.   None of the studies performed by Dr. Neuman and others replicates the real life conditions of an obese individual struggling for their life, an individual under the influence of excitatory drugs, or the combined weight of three police officers in full gear. Institutional review boards, such as that of UCSD, have not allowed such experimentation to take place because of the risks involved.

3.   Neither Dr. Neuman, nor his colleagues, certify the cause of death in sudden and unexpected deaths. Their clinical experience is unreliable in making the necessary determinations in this case.

4.   The majority of relevant physicians, those who investigate and certify sudden and unexpected deaths, namely forensic pathologists, understand restraint asphyxia to be a valid and well-recognized cause of death.

5.   Further, the literature and experience document cases in which one individual, sitting on the torso of another individual, has caused the person to die as a result of inability to breathe.

6.   In forensic pathology, the circumstances surrounding a particular death are crucial to determining the cause of death. Lab studies that do not replicate the actual circumstances in a case are not reliable in determining the cause of death in a case such as the death of Victor Sandoval. Additionally, a specialized knowledge of ventilation and oxygenation of the blood is not required to determine the cause of death in this case.

7.   In forensic pathology, a review of medical records is not essential in determining the cause of death. Forensic pathologists determine and certify the

cause of death following autopsy and supportive lab tests without reviewing the patient's entire medical record, or even parts of it. In the instant case, I have reviewed the medical records for the decedent from the date of the incident.

8. In the instant case, the presence of petechial hemorrhages in the eyes of Mr. Sandoval is further evidence that Mr. Sandoval was asphyxiated and blood flow returning to the heart was significantly decreased.

9. I agree with the Deputy Medical Examiner Ajay Panchal that positional asphyxiation associated with restraint was a cause of Victor Sandoval's death.

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct, and is executed this 9th day of April, 2010, in San Diego, California.

_____
Harry J. Bonnell, MD